KANSAS PACIFIC RAILWAY CO. v. LEWIS DUNMEYER.

| 19 | 539 |
| 41 | 701 |
| 19 | 539 |
| 56 | 648 |
| 19 | 539 |
| 78 | 755 |

1. BREACH OF COVENANT; *Variance Between Allegation and Proof.* In an action of covenant upon a warranty to recover back the purchase-money expressed in the deed of conveyance of the real estate, *held,* that under an allegation in the petition that the plaintiff was "ousted and dispossessed of the premises by due course of law," it was inadmissible to prove a constructive eviction by the purchase of a paramount title hostilely asserted by the party holding it, as the variance between the allegation and proof is fatal.

2. ——— While the general rule is, that the grantee must make the most of the title he has acquired, and yield possession only to a hostile assertion of a paramount title by suit to recover the land, or in pursuance of a demand for the possession under a claim thereto, or upon a distinct hostile assertion of title, yet, where the title to the land in controversy is in the United States, and liable to entry and settlement under the homestead laws of the government to all who possess the proper qualification, that of itself is such a hostile assertion of the paramount title as will authorize the grantee to voluntarily submit to it.

*Error from Saline District Court.*

ACTION by *Dunmeyer,* for breach of covenant of possession. Trial at the May Term 1876, and judgment for plaintiff. The *Railway Company,* defendant, brings the case here. All necessary facts are set forth in the opinion, *infra.*

*J. P. Usher,* and *Charles Monroe,* for plaintiff in error, contending that an allegation that "eviction was by due

course of law," was not sustained by a proof of constructive eviction, cited Rawle on Cov. 249; 5 Iowa, 89; 17 Ill. 185; 11 N. H. 74; 51 Ind. 519. A party cannot allege one thing, and prove its equivalent by proving a different thing: 4 Sandf. 665; 8 Kas. 568.

The opinion of the court was delivered by

HORTON, C. J.: On the 11th of November 1875 an action was commenced in the court below by Lewis Dunmeyer against the K. P. Rly. Co., to recover damages because, by a deed dated 12th November 1870 the railway company sold and conveyed to the said Dunmeyer certain real estate, described as the W. $\frac{1}{2}$ of the S.E. $\frac{1}{4}$, and the E. $\frac{1}{2}$ of the S.W. $\frac{1}{4}$ of section 25, in township 13 south, range 2 west of 6th P. M., Kansas, and covenanted therein to warrant and defend "the possession of the said premises" to the said Dunmeyer, but after the execution of said deed the railway company did not and would not "defend said premises and the possession thereof, but on the contrary, said company had not at the date of such deed a good title, as the paramount title thereof was in the United States, by virtue of which paramount title said Dunmeyer was afterward, on the 16th of October 1871, ousted and dispossessed of the said premises by *due course of law*." The consideration of the deed was $200. The case was tried to a jury, but after the introduction of all the evidence, the court refused to give to the jury any instructions, and directed them to find a verdict for the plaintiff for $200, with interest from the date of the deed from the railway company to Dunmeyer. Judgment was rendered for $277.72 for Dunmeyer, and various errors are assigned as grounds for a reversal of the same. We need only notice two of them.

It is alleged that there was a fatal variance between the allegations of the petition and the proof to support the same, and that said Dunmeyer proved no eviction. Upon these points, the evidence was substantially as follows: A patent was offered on the part of the plaintiff in the court below to

the premises in controversy from the United States to one G. B. Dunmeyer, of the date of 25th March 1875. After which Lewis Dunmeyer testified as follows:

"I am the plaintiff in this action. I own part of the land in controversy — one eighty of it; Samuel Crowell owns the other eighty. I bought it from Gabe Dunmeyer last spring. It is part of the same land that I had bought before from the railroad company. I hold possession under my deed from Gabe, and not under my deed from the railroad company."

*Cross-Examination:* "Gabe Dunmeyer is my son. I paid him about $900 for this land, counting interest and all. Don't think I paid him in money; it was the same as money; I held notes of his for money that I had lent him, and I gave him those notes. Mr. Geis and I bought this land together, of Mr. Miller. * * * But Mr. Geis acted for me. Afterward Gabe bought Mr. Geis' share. I had money belonging to Gabe, and paid Geis for him. This money that I paid to Geis is no part of the consideration of the deed from Gabe to me. When the deed was made to me by the railway company, I was in Pennsylvania. Gabe came out and went onto this land the spring after the deed to me was made. The way Gabe came to go on this land, Gabe had determined to go to Kansas, and had no place to go to, and I told him that Mr. Geis and I had bought it, and if Mr. Geis was willing, he could go out and live on it, and he did so; there was a house on it. When I bought I took possession. I never broke any. I was out here every year. This land is about twenty rods from the Kansas Pacific railroad track. When I bought the eighty acres of Gabe I bought his interest also in the deed from the Kansas Pacific Railway Company, or his claim against the said company, on account of the failure of title, and I then settled with him for it."

And G. B. Dunmeyer testified as follows:

"I am the one who got the patent for the land. I contested it with the railroad company before the land-office here. C. A. Hiller appeared in that contest as attorney for the railroad company. I was told it was government land, at the land-office, and other parties were talking of taking it, and I went and homesteaded it to save it. I paid $200 for the land, and the fees, $19.50, at the land-office. I mean, this is what I paid the government to get the land. When

I sold the eighty acres to my father, Lewis Dunmeyer, I also sold him in the trade, my right against the Kansas Pacific Railway Company in the deed from the Railway Company. They had deeded the land to my father, but I owned one-half of the land, and paid one-half of the money for the land. There was no agreement or understanding between me and my father that I should go on and homestead this land in order to defraud the railroad company. I homesteaded because I was informed at the land-office that it was government land, and the railroad company had no right to it. I homesteaded it to save the land. * * * I sold half of this land to my father, Lewis Dunmeyer, over a year ago. He paid me for it in notes of mine that he held, for money borrowed; think he paid me some money. I bought half of this land from John Geis, before I made homestead entry; paid him $560 for it. Lewis Dunmeyer paid it for me. John Geis told me he would deed the whole of it to my father, and he would make a deed to me, but never did. Think my father paid me $460, or $560, for the eighty he bought of me. The money he paid to John Geis for me was no part of this consideration. When I first went onto this land Mr. Geis and my father told me that they had bought it, and that there was a house on it, and I could go and live in it, which I did. I told Mr. Geis if I liked it I would buy it from him, and afterward did so."

This evidence does not sustain the allegation in the petition, that said Lewis Dunmeyer was ousted and dispossessed of the premises by *due course of law.* The words, "by due course of law," are synonymous with "due process of law," or, "the law of the land;" and the general definition thereof is, "law in its regular course of administration, through courts of justice;" and, while not always necessarily confined to judicial proceedings, (as, for instance, the collection of taxes is held to be within the phrase "by due process of law,") yet these words have such a signification when used to designate the kind of an eviction, or ouster, from real estate by which a party is dispossessed, as to preclude thereunder proof of a constructive eviction resulting from the purchase of a paramount title when hostilely asserted by the party holding it. As the petition alleged an ouster by due course of law, and

as an issue was joined thereon, the evidence should have supported the allegation. It does not. An eviction, or ouster, was not pleaded in general terms, but a particular kind of an eviction was alleged, and the plaintiff in the court below should have been confined in his testimony to his pleading. He was not authorized to prove a different eviction. A party cannot allege one thing, and, to support the same, prove a state of facts dissimilar thereto, and of which the opposing party had no notice. The particular allegation as to the ouster by due course of law was not sustained; and the court erred in its rulings as to the admission of evidence, and the rendition of the judgment. *Garvey v. Fowler*, 4 Sandf. 665; *U. P. Rly. Co. v. Young*, 8 Kas. 658.

The eviction proved in the case was sufficient, if the pleadings had authorized the introduction of the evidence. Under the railway title, Lewis and G. B. Dunmeyer were joint-owners of the premises. After G. B. Dunmeyer had gone into actual possession, he was informed that it was government land, and that other parties were talking of taking it. He homesteaded it, to save the land. The railway company had no title to the premises, and never had; they were public lands, subject to homestead-entry and settlement. G. B. Dunmeyer complied with the provisions of the United States laws, and obtained the patent. While thus in possession under title derived direct from the government, defendant in error purchased of said G. B. Dunmeyer the outstanding paramount title. While it is true, that under the covenant of warranty, as usually expressed, a purchaser cannot as a general rule buy in any paramount claim, and elect to consider himself evicted to the extent of the purchase-money of such claim, yet where the title to the land in controversy is in the United States, and liable to entry and settlement under the provisions of the homestead law, that of itself is such a hostile assertion of the paramount title as would authorize the purchaser to voluntarily submit to it. *McGary v. Hastings*, 39 Cal. 360. We have considered the facts tending to prove a constructive eviction to prevent this

point again being a subject of difference in event of an amendment to the petition and a new trial.

The judgment of the district court will be reversed, and case remanded for a new trial.

All the Justices concurring.