Petitioners seek to open a final decree which has been entered in the above-entitled cause, and to procure a stay *Page 123 
of its execution, and also to procure a stay of an execution of a judgment heretofore entered in the supreme court against petitioners Robbins and Edelman, and also a stay of an action now pending in the supreme court on a surety bond of petitioner Fidelity and Deposit Company of Maryland. The petition is in the nature of a bill of review; but no objection is made to the procedure by petition.
The decree against which relief is sought is a decree of foreclosure of a purchase-money mortgage. The conveyance was made by complainant to one Sager and contained a covenant of general warranty of title; the mortgage was made by Sager to complainant; petitioners Robbins and Edelman purchased subject to the mortgage and defended the foreclosure suit. One of the defenses made was that a portion of the land conveyed was tidal land; abatement from the amount due was sought as damages for breach of the covenant of general warranty.
Testimony was introduced by defendants to the effect that portions of the lands conveyed were overflowed by tides; if at mean high tide that was true, the situation presented was a title in defendants to high-water mark, and title in the state to the tidal lands below that boundary. But the evidence further disclosed that defendants were in possession and no claim was made that their possession or right of possession had been disturbed or threatened in any way. Accordingly, it was held that no eviction, either actual or constructive, had been shown to support an action on the covenant of warranty. Kellog v.Platt, 33 N.J. Law 328, was deemed conclusive to that effect. No suggestion was made to the court that the doctrine of constructive eviction could be extended to a case in which the possession of the covenantee, or his grantee, had neither been challenged nor relinquished. (See reported opinion, on which the decree was founded, in Greenwood v. Robbins, 107 N.J. Eq. 153.)
It is now urged by the petitioners, in support of the petition, that a "constructive eviction" should be found to exist from the single circumstance, standing wholly alone, that title to the tidal land was in the state, notwithstanding defendants were in peaceable possession with their possession *Page 124 
unchallenged and in no way threatened. To so determine would, in my judgment, disregard the principles clearly defined by our supreme court in Kellog v. Platt. In that case the inherent difference between a covenant of seizin or a covenant against encumbrances, and a covenant of warranty of title is clearly pointed out and their force and effect fully defined; the covenants of seizin and against encumbrances are there defined as covenants not only in form but also in operative effect inpraesenti, and are inoperative in behalf of a grantee of the covenantee, whereas a covenant of warranty of title is a covenantin futuro, and runs with the land as an incident of the inheritance. Also it is there fully recognized that the covenantee in a covenant of warranty, or his grantee, need not wait for an action at law to be brought or a judgment of disseisin to be procured and executed by the owner of the superior title, but that the covenantee or his grantee in good faith may "involuntarily" yield his possession to the person claiming the superior title or purchase such title when his possession is threatened in a manner to induce a well-founded belief that the threat will be enforced; that in such circumstances — a threat to which the covenantee has yielded in good faith — there arises a constructive eviction or ouster tantamount to an actual eviction. But it is there also pointed out that a voluntary surrender of possession is not a constructive eviction. At pages 334, 335 of the reported case it is said:
"It must not be supposed, however, that the existence of paramount title, and the acquisition of it by the covenantee by purchase, of his mere volition, will amount to a constructive eviction sufficient to support an action on the covenant of warranty. To adopt such a principle would be to confound a covenant of warranty with covenants for seizin or against encumbrances, and to disregard the distinction which gives to the former its negotiable quality as an incident of the inheritance, and maintains it as a covenant unbroken, and therefore excludes it from the rule of the common law, that a chose in action is incapable of assignment. To preserve the quality of transmissibility in covenants of warranty, the obligation must be prospective to be incurred by some act *Page 125 
done under the adverse title hostile to the title under which the covenantee holds, either by entry or the bringing of the suit — or at least by its assertion in some way, under such circumstances as shall induce a well-founded belief that it will be enforced, under the menace of which the covenantee honestly yields, and he may be said to have suffered an involuntary loss of the possession under his defective title. When a paramount title is asserted by such acts, or under the circumstances mentioned, a constructive eviction takes place, and the covenantee may abandon the possession, or purchase in the adverse title and retain his remedy upon the covenant of warranty."
In Rawle on Covenants (5th ed., § 150), this doctrine is expressed as follows:
"But under the covenant of warranty, as usually expressed, it must not be supposed that a purchaser can, as a general rule, buy in any paramount claim, and elect to consider himself evicted to the extent of the purchase-money of such claim. However far the doctrine of constructive eviction has been carried, it is believed to be still absolutely necessary that the adverse claim should have been hostilely asserted."
In support of the petition now presented the claim is now made, for the first time, that where the paramount title is found to be in the state, the limitation of the doctrine of constructive eviction, as defined in Kellog v. Platt, should be held to be inapplicable, and a constructive eviction by title paramount should be deemed to have arisen; this contention is made notwithstanding the fact that the grantees of the covenantee are in peaceable and undisturbed possession, and have not been impelled to acquire title from the state and the rights of the state have not been asserted or threatened, and no well-founded belief can be said to exist that such rights will be presently asserted or enforced.
In this contention petitioners rely upon a number of cases which have arisen in our western states in which the public lands of the states and the United States are open for homestead settlement and pre-emption. In these states the recognized policy is the encouragement of settlers on the land and the public lands are held and disposed of for that purpose. *Page 126 
In these circumstances a line of decisions has grown up in those states to the effect that a covenantee in a covenant of warranty of title, embracing such lands, need only show in support of his action on the covenant that the title is in the state or United States, and need not show that before action brought he has acquired the public title to protect his possession against hostile settlers; that in such circumstances the fiction of constructive eviction may be adopted, since such lands are held, or are to be held, for settlement and pre-emption. I am unable to view these decisions, if sound, as applicable to the situation presented in this state touching its tidal lands. In this state our tidal lands adjacent to the uplands present a situation differing radically from public lands of the west held for homestead settlement. Assuming it to be true, as claimed, that mean high-water mark is above the level of the meadow land here in controversy, it will be noticed that the deed of conveyance which contains the covenant of general warranty of title embraces the upland adjacent to the meadow and constitutes petitioners owners of the ripa, and accordingly the meadow land, here in controversy, is the land between high and low-water mark adjacent to and in front of the upland, the title to which is not questioned. The land titles of our original proprietors, under whom all individual titles in this state are now held, came to them through grants intended to extend, and then believed to extend, to low-water mark, and although individual titles are now held to extend only to high-water mark, it may be said to have been the clearly defined policy of this state from its earliest history to the present time to recognize many rights of the riparian owner in the tidal land in front of his upland; among them the right to reclaim by filling in the tidal lands, wharfing rights, and at this time a preference right to acquire the tidal lands. The notion that under present conditions the title of our state in these riparian lands is a present menace to the possession of the shore owner is untenable, and petitioners are in fact at this time in peaceable possession. To extend the doctrine of constructive eviction to this situation before the shore owner has been impelled to acquire title from the state would, in my judgment, *Page 127 
contravene the principles already referred to as defined by our supreme court.
The case of West Coast Manufacturing and Investment Co. v.West Coast Improvement Co. (Wash.), 66 Pac. Rep. 97, has been cited in behalf of petitioners as analagous because the covenant therein embraced tidal lands owned by the state. In that case the state had demanded of the covenantee possession of the part of the tidal land occupied by the covenantee, and had threatened suit in case its demand was refused; the covenantee thereupon purchased from the state and brought suit on the covenant of warranty of title. That situation presented a typical case of constructive eviction, and the purchase price paid by the covenantee to the state afforded a stable and accurate measure of the damages suffered by the covenantee.
I am impressed that no justification is to be found for ignoring the specific limitations of the doctrine of constructive eviction as clearly defined by our supreme court in Kellog v.Platt, supra; to do so is to confuse the offices of covenants of seizin and covenants of warranty. Petitioners brought no action on the covenant prior to the foreclosure decree, and failed in the foreclosure suit to establish facts constituting a constructive eviction; no new matters have since transpired; the action on the covenant, which has since been brought in Pennsylvania, should not deter the enforcement of the foreclosure decree.
I have herein regarded the covenant as embracing the tidal lands. In Cooper v. Bloodgood, 32 N.J. Eq. 209, Chancellor Runyon expressed a doubt whether a covenant of warranty of title, in a deed of conveyance with boundaries extending to low-water mark, should be deemed as intended by the parties to include the territory which was obviously tidal lands. See, also, Boon v.Kent, 42 N.J. Eq. 131.
Complainant forcefully urges laches upon the part of petitioners which should be operative to deny the relief now sought. The views herein expressed render a consideration of that claim unnecessary. *Page 128