# EDWARD SCHNEIDER V. LIPSCOMB COUNTY NATIONAL FARM LOAN ASSOCIATION ET AL.

No. A-1083. Decided May 14, 1947.
Rehearing overruled June 25, 1947.
(202 S. W., 2d Series, 832.)

*Boyer, McConnell & Hankins,* and *Max W. Bayer,* all of Perryton, for Edward Schneider, petitioner.

H. A. Berry, of Houston, for Lipscomb County National Farm Loan Association, W. E. Terrell, of Waco, for J. R. Milam, Roy Sansing, of Higgins, for A. R. Turner, Hoover, Hoover & Cussen, of Canadian, for J. D. McCelvey, and A. H. McCulloch, of Dallas, for Fannie P. Morgan, all respondents.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

This suit is by petitioner Schneider against respondent Lipscomb County National Farm Loan Association, his grantor, to recover damages for breach of a covenant of general warranty. The trial court's judgment that petitioner take nothing was affirmed by the Court of Civil Appeals on its holding that the suit is barred by the four year statute of limitations pleaded by respondent. 196 S. W. (2d) 954.

A part of the land that had been conveyed by respondent to petitioner was awarded by the Commissioner of the General Land Office as unsurveyed public school land to one Sansing on December 8, 1938, more than four years before the filing of this suit. The judgment of the Court of Civil Appeals was rendered on its conclusion that the award "constituted an act on the part of the State of Texas which amounted to an assertion of its superior title and constituted an eviction of the appellant." This was held notwithstanding the fact that petitioner did not yield to what the Court of Civil Appeals regarded as the asser-

tion of a paramount title, but remained in possession of the land that had been conveyed to him, insisted upon the superiority of his title, and contested by suit the title asserted by Sansing under the award, until final judgment was rendered against him.

Respondent, the Farm Loan Association, on August 21, 1925, sold and conveyed to petitioner Schneider, with covenant of general warranty, all of survey 4 and a part of survey 3, Block D, W. P. Wiser surveys in Lipscomb County, containing 1200 acres, the land being described by metes and bounds so that its north boundary line coincided with the north boundary line of the State. Petitioner went into possession of the land and continued to use, possess and occupy it. In the year 1937 one Sansing, believing that there was a strip of unsurveyed land belonging to the public school fund lying between the north boundary line of the State and the north line of Block D above referred to, filed an application for a survey of the land in order to buy it under the provisions of Section 6 of the 1931 Sales Act, Chapter 271, Acts Regular Session, 42nd Legislature, pp. 452, 453-454. He caused a survey of the land to be made in thirty-four separate tracts and filed notes to be returned to the Land Office. After approval by the Commissioner of the General Land Office of the field notes for sixteen of the tracts, containing in all 2343.03 acres, and valuation of the land, Sansing, on December 8, 1938, filed applications to buy the sixteen tracts, and on the same day the Commissioner of the General Land Office issued to him an award of them.

The award was followed by the institution of eleven suits against Sansing by those who held and possessed, as parts of surveys in Block D, tracts that had been awarded to Sansing as unsurveyed land, one of these being filed by petitioner Schneider, in which he asserted his ownership, as a part of the land that had been conveyed to him by respondent, the Farm Loan Association, of 401.6 acres, being one of the tracts that had been awarded by the Commissioner to Sansing. The eleven suits were consolidated for trial. All of the plaintiffs except Schneider had claimed and sought to exercise the preference right of purchase given by Section 6 of the 1931 Sales Act to persons holding and occupying in good faith land sought to be bought by another as unsurveyed public school land. Sansing contested the rights of those who had sought to exercise the preference right, but judgment was rendered in their favor. The court found that the land which Sansing had applied to purchase was unsurveyed public school land and rendered judg-

ment in his favor against Schneider for the title and possession of the 401.6 acres. The judgment was affirmed by the Court of Civil Appeals. Sansing v. Bricka, 159 S. W. (2d) 142. Schneider's suit against Sansing was filed December 1, 1939, and the judgment against him and in favor of Sansing became final following the appeal, sometime in 1942. This suit was filed February 11, 1943.

■■ The rule is well established that a cause of action for breach of a covenant of general warranty does not arise until there has been an eviction. Formerly, actual eviction was required before suit could be brought, but now suit may be brought after constructive eviction or *ouster in pais*, as when the paramount title has been positively asserted against the covenantee and he has yielded to it by surrendering possession or by purchasing the title. The covenantee thus constructively evicted has the burden of proving, before he can recover on the covenant, that the paramount title has been positively asserted against him and that it in fact is paramount. Westrope v. Chambers, 51 Texas 178; Jones' Heirs v. Paul's Heirs, 59 Texas 41; Clark v. Mumford, 62 Texas 531; Johns v. Hardin, 81 Texas 37, 16 S. W. 623; Rancho Bonito Land, etc. Co. v. North, 92 Texas 72, 45 S. W. 994; Whitaker v. Felts, 137 Texas 578, 155 S. W. (2d) 604; Thompson on Real Property, (Perm. Ed.) Vol. 7, pp. 223-226, Sec. 3752.

The Court of Civil Appeals, in its decision that petitioner Schneider was evicted by the issuance of the notice of the award to Sansing, gave to the mere issuance or making of the award the effect of a constructive ouster. It held that the award by the Commissioner was the assertion by the State of its superior or paramount title. But if the award was a formal and authentic assertion by the State of paramount title (and as will be shown hereinafter, it should not be so regarded) there was no submission to the assertion, and consequently there was no constructive eviction or *ouster in pais*. Constructive eviction that will serve as the basis of a suit for breach of the covenant of general warranty has two elements, (1) a positive assertion of a paramount title and (2) a yielding to that assertion of title. The opinion in Rancho Bonito Land, etc. Co. v. North, 92 Texas 72, 75, 45 S. W. 994, contains the following:

"The warranty in former times could only be broken by an actual eviction from the possession, but in modern times the rule has been so far relaxed that an eviction in legal contemplation occurs when the facts are such that it would be useless for

the covenantee to attempt to maintain the title conveyed him; e. g., where the holder of the superior title has taken actual possession or threatens suit. *If in such cases he yields to a force he can not resist, he is in contemplation of law evicted."* (Emphasis added.)

The court, discussing constructive eviction, or *ouster in pais,* in Jones' Heirs v. Paul's Heirs, 59 Texas 41, 45, said:

"If a paramount title is positively asserted against the vendee, he is not required to make an unavailing and useless resistance against a claim of title which is manifestly superior and must prevail. Under such circumstances he may give up the land to the claimant, and resort to his warranty."

In Clark v. Munform, 62 Texas 531, 535, the meaning and sufficiency of constructive eviction is thus tersely stated:

"And notwithstanding a covenant of warranty is not broken until eviction by paramount title, still eviction by judgment at law is not essential to establish the peace; the covenantee may yield to the paramount title and give possession, or else buy his peace and claim for breach of the covenant."

For other authorities showing that yielding to the paramount title asserted is an essential part of constructive eviction, see: Thompson on Real Property, (Perm. Ed.) Vol. 7, pp. 223-226, Sec. 3752; Tiffany's Real Property (3d Ed.) Vol. 4, pp. 156-157, Sec. 1013, 14 Am. Jur., p. 535, Sec. 72.

■ The decision of the Court of Civil Appeals that the mere making of the award by the Commissioner of the General Land Office "constituted eviction" is in conflict with the foregoing authorities which define and explain constructive eviction. Schneider did not yield to the award, but remained in possession and, as was his right, contested it. The decision contradicts the very term itself. There is no eviction, either actual or constructive, of one who remains in possession and asserts and defines his title against the title or claim pressed upon him.

There are decisions by courts of other states holding that when the state has the paramount title and makes a sale of the land, a covenantee in possession under another title may thereafter abandon possession and sue his covenantor. The rule of those cases is thus expressed in the text of American Jurisprudence cited by respondent:

"A grant or sale of land by a state, while holding the paramount title, has been viewed as such a hostile assertion of title as will justify those in possession under defective titles in treating this act as an eviction, abandoning possession, and suing their covenantors. This view is based on the fact that ordinarily such sale is the only way in which the state can assert its title." 14 Am. Jur., p. 536, Sec. 74.

It is to be noted that the rule as stated is not a positive rule that a grant or sale by the State is such a hostile assertion of title as amounts to eviction. The statement is that it is such an assertion of title as will justify those in possession in treating it as an eviction, abandoning possession and suing their covenantors. The implication is that the person in possession is not required to treat the sale as an eviction, but may remain in possession and defend his title, and that if he does this the sale is not an eviction. Three cases are cited in support of the text above quoted. In each of those cases the person in possession yielded to the asserted claim and then resorted to the warranty.

The reason given for the rule quoted from American Jurisprudence is that ordinarily sale is the only way in which the State can assert its title. The same reason is given for this rule in Green v. Irving, 54 Miss. 450, 28 Am. Rep. 360, which seems to be the leading case supporting the quoted text. It is said in substance in that case that it is not perceived how else than by sale the State could assert its title, except by an act of the legislature; and it is further stated that "If the State can bring an action of ejection, it would be impossible to execute in its behalf a writ of habere facias possessionem."

■ In our State the Attorney General, since State v. Delesdenier, 7 Texas 76, has had and exercised authority to assert the State's title by bringing suit in the name of the State for the recovery of title and possession of land claimed and possessed adversely to the State. Article 5420 of the Revised Civil Statutes, which has been in effect since 1900, not only authorizes, but makes it the duty of the Attorney General to institute suit for the recovery of any public lands that are held, occupied or claimed by any person or corporation adversely to the State or to any fund. The institution of suit in the name of the State and the recovery of final judgment in its favor for title and possession constitute the most authentic and effective assertion and enforcement of the State's title. Final judgment rendered

in such a suit is an ouster and undoubtedly the final judgment can be enforced.

Because of the peculiar laws of this State with respect to sales of public school land, the making of an award by the Commissioner of the General Land Office should not be given, and in our opinion does not have, the dignity of an authentic and hostile assertion by the State of its title, and should not be held by mere construction to work an ouster. This is especially true as to awards of land applied for as unsurveyed land. The award is not a sale. The Commissioner does not make the sale. It is accomplished by the offer made by the State in the statute which prescribes the terms and conditions of the sale, and by the acceptance of the offer by the intending purchaser in his taking the several steps for purchase as set out in the statute. As is concisely and clearly stated by Judge Williams in Pohle v. Robertson, 102 Texas 274, 277, 115 S. W. 1166: "The legal efficacy of a purchase of school land comes from the law which gives effect to the taking of the steps by which it authorizes the acquisition of title, and not from the consent of the officer to an application." In that case it was held that the claim by the defendants under an award made by the Commissioner did not constitute either title or color of title within the meaning of the statute of limitations when, at the time the award was made, a prior sale was in good standing. For other cases holding that the Commissioner is not invested with discretion in making sales of school land, that his acts are ministerial and subject to review by the courts, and void if contrary to the statutes, and that one applying to buy land becomes a purchaser by his compliance with the terms and conditions prescribed by the law and not by the act of the Commissioner in making the award to him, see: Pence v. Robison, 102 Texas 489, 119 S. W. 1145; Ford v. Brown, 96 Texas 537, 74 S. W. 535; Day Land & Cattle Co. v. State, 68 Texas 526, 541, 4 S. W. 865; Burnam v. Terrell, 97 Texas 309, 78 S. W. 500; Jumbo Cattle Co. v. Bacon & Graves, 79 Texas 5, 13, 14 S. W. 840; Fox v. Robison, 111 Texas 73, 229 S. W. 456; State of Texas v. Robison, 119 Texas 302, 30 S. W. (2d) 292; Metzler v. Johnson, 1 Tex. Civ. App. 137, 20 S. W. 1116; Kemper v. State, 72 S. W. 88. The foregoing principles and decisions have their source in Section 4 of Article 7 of our Constitution, which provides that the public school land shall be sold under such regulations, at such times, and on such terms as may be prescribed by law.

After an award has been made by the Commissioner, the conflicting claims to the land are determined, as is illustrated

by the cases above cited, sometimes in an original proceeding for mandamus brought in the Supreme Court against the Commissioner, and sometimes in a suit in district court to which only the adverse claimants are parties. One who has complied with the requirements of the statutes prescribing the method of purchasing school land is entitled to litigate his rights with adverse claimants, even though he has not received the evidence of his title, Camp v. Gulf Production Co., 122 Texas 383, 397-400, 61 S. W. (2d) 773; Caples v. Cole, 129 Texas 370, 377, 102 S. W. (2d) 173, 104 S. W. (2d) 3; Short v. W. T. Carter & Bro., 133 Texas 202, 219-221, 126 S. W. (2d) 953, and cases there cited. Since rights in the land may be acquired and may be adjudicated without an award, or notwithstanding an award to an adverse claimant, the Commissioner's award is of but little consequence until the sale has become immune from attack by the force of the one year statute, Article 539, Section 4. From the award the usual presumption of regularity of official action arises, but the presumption is prima facie and is easily rebutted. Short v. W. T. Carter & Bro., 133 Texas 202, 219, 126 S. W. (2d) 953. It should be noted that the 1939 amendment of the 1931 Sales Act provides that "no presumption shall obtain in any suit involving the existence of a vacancy, as a result of the action of the Commissioner in this respect," referring to the making of the award. Acts Regular Session, 46th Legislature, Chapter 3, Section 1(e), pp. 465, 470, Vernon's Annotated Civil Statutes, Article 5421c.

■ Practically considered, neither the Commissioner's award nor the making of a sale by the applicant's compliance with the provisions of the statute should be given the effect of an ouster, and this is especially true when the application is for the purchase of unsurveyed land. Section 6 of the 1931 Sales Act prescribes as follows the steps to be taken by one desiring to purchase what he believes to be unsurveyed or vacant land belonging to the State: The applicant files with the county surveyor his application describing the land that he desires to acquire. The surveyor makes a survey of the land and prepares field notes, after notifying by registered mail claimants of the land and such adjoining owners as the tax rolls may disclose. The field notes are filed in the Land Office. If the area is found by the Commissioner to be unsurveyed and subject to sale, he values the land and gives notice to the applicant, who files his application to purchase and his obligation for the deferred payments in the General Land Office and makes the required cash payment. The sale is effective from the date on which the appli-

cation and obligation are filed and the payment is made. Article 5312. The Commissioner issues a notice of award. Article 5317.

The Commissioner, in the course of the proceedings, determines, before he values the land, whether the area is unsurveyed land and subject to sale. This he does from the field notes, the records in his office, and from such other information as he has or may be able to obtain. It is a matter of common knowledge that the question whether an area is unsurveyed land is usually a difficult question of law. This arises from the haphazard manner in which certificates were located and surveys made many years ago, and from carelessness in the making and marking of early surveys when the land was of little value. The Commissioner of the General Land Office, often neither a trained lawyer nor an experienced surveyor, is not able, and is not expected to be able, to decide with any great degree of certainty or finality the difficult question of law that is usually presented. His determination that the land is unsurveyed or vacant land belonging to the State and his award following that determination are ordinarily regarded as tentative and, when the land is of substantial value, are almost invariably followed by a suit to develop the facts fully and to obtain an authorative and final decision of the question.

In the instant case Schneider, the petitioner, held and possessed the land under a deed which conveyed it to him as part of two valid existing surveys, the field notes of which described them as extending to and bounded on the north by the bounary line between Texas and Oklahoma. The land finally lost by Schneider after final judgment in the suit between him and Sansing was awarded to Sansing by the Commissioner on the theory that it was unsurveyed land outside and north of the two existing surveys. As is apparent from the thorough opinion in that case (Sansing v. Bricka, 159 S. W. (2d) 142), the question presented and decided was a close and difficult one involving the careful application to the peculiar facts of the case of the difficult rules as to conflicting calls. The case is typical. Sometimes the Commissioner's tentative action is sustained after full development of the facts in court; often it is not sustained.

■ The statute prescribing the method of purchasing unsurveyed land is not an assertion of ownership by the State. It offers no certain land for sale, but merely holds out to prospective purchasers a method of acquiring unsurveyed land if they can find it. The purchasers' acts in taking the steps prescribed for buying the land are not assertions by the State of its ownership. And, as has been said, the Commissioner's award is not a sale; it is the tentative act of a ministerial officer, not

necessary to effect a sale. Under this peculiar method of selling land and in view of the narrow scope of the Commissioner's authority, the award is not a formal, authoritative assertion by the State of its title. A decision that an award is in effect an ouster would be in contradiction of the statutory procedure and the practice which have been discussed, and quite out of harmony with our decisions as to the making of sales and the Commissioner's authority.

But even if the award could be considered a formal authoritative assertion of title by the State, there was no constructive eviction, because Schneider did not yield to it. There was no actual eviction until the judgment in the suit between Schneider and Sansing became final. That occurred, and indeed that suit was filed, within four years before the filing of this suit. Consequently this suit is not barred by limitation.

There are cases in which the opinion is expressed that when the paramount title is in the United States that of itself amounts to a constructive eviction. Cover v. McAden, 183 N. C. 641, 112 S. E. 817; Crawford County Bank v. Baker, 95 Ark. 438, 130 S. W. 556; Pevey v. Jones, 71 Miss. 647, 16 So. 252, 42 Am. St. Rep. 486. And in one or two cases the same opinion is expressed when the paramount title is in the state. Staub v. Tripp, 248 Mich. 45, 226 N. W. 667. These decisions are influenced by statutory provisions, according to which a grantee of such land by another than the United States cannot take possession without becoming a wrongdoer, and is liable to summary ejection; and in some of the cases the covenantee had never been in possession of the land. Such decisions are subject to the criticism that they disregard the distinction between the breach of a covenant of seisin and the breach of a covenant of warranty of title. Green v. Irving, 54 Miss. 450, 28 Am. Rep. 360, 366; Greenwood v. Robbins, 108 N. J. Eq. 122, 154 Atl. 333. The more carefully considered cases go no further than to hold that the existence of paramount title in the United States or in the state will justify the covenantee in yielding to it and instituting suit against his covenantor. Kansas Pac. Ry. Co. v. Dunmeyer, 19 Kan. 539; West Coast Manufacturing Co. v. West Coast Improvement Co., 25 Wash. 627, 66 Pac. 97, 62 L. R. A. 763; Greenwood v. Robbins, 108 N. J. Eq. 122, 154 Atl. 333; Thompson on Real Property (Perm. Ed.) Vol. 7, Sec. 3762, p. 233.

The opinion in Shannon v. Childers, 202 S. W. 1030 (application for writ of error refused), cited by the Court of Civil

Appeals and by respondent, contains statements inconsistent with conclusions which we have expressed. There are important differences, however, between the facts of that case and the facts in this case, one being that there was in that case no award of the land that had been conveyed to the covenantee. A correct judgment was rendered in the case, because there was a constructive eviction when the covenantee acquisced in the result of a resurvey and yielded to the paramount title asserted by the owners of the prior surveys.

■ Petitioner asks for rendition of judgment in his favor against respondent, the Farm Loan Association. But a question of fact is raised by the testimony of petitioner and a witness offered by respondent as to the amount of damages, that is, as to the relative values of the land to which the title failed and of the whole premises conveyed. See Hynes v. Packard, 92 Texas 44, 49, 45 S. W. 562. We are remanding the case generally rather than for the trial merely of severable issues, since most of the material facts are stipulated and evidenced by documents in the record, and practically all of the testimony relates to the value of the land and to the question of estoppel to plead limitation. The latter question is immaterial when it is held that the action is not barred by limitation.

■ Respondent, the Farm Loan Association, by cross action made several prior warrantors in the chain of title parties and sought judgment against them for such sum as might be awarded petitioner against it; and some of those parties filed like cross actions. The trial court, after rendering judgment that petitioner Schneider take nothing against respondent, the Farm Loan Association, further ordered and adjudged that, since the right of the various cross plaintiffs to recover against their cross defendants was dependent and contingent upon recovery by Schneider against the Farm Loan Association and he had been denied recovery against it, the several cross plaintiffs should take nothing against the cross defendants. Schneider's appeal bond is payable to the Farm Loan Association and to all of the cross defendants. Several of the parties against whom the cross action was filed by the Association make the contention by motion and brief that, because the Association did not except to the trial court's judgment and give notice of appeal, it lost whatever right it might have had on its cross action. The contention cannot be sustained. Judgment was rendered in favor of the Farm Loan Association, and there was no occasion for it to except to the judgment or to give notice of appeal. The trial court's judgment, according to its express terms, denied recovery

to the Association on its cross action only because no judgment had been rendered against it in favor of Schneider, and the rights of the Association on its cross action are yet to be determined on another trial of the case.

█ The same parties and others in their pleadings and briefs take the position that petitioner Schneider and the Association are estopped to claim damages for the breach of warranty or warranties because neither Schneider nor the Association took advantage of the preference right given Schneider by Section 6 of the 1931 Sales Act to buy the land possessed by him which was awarded to Sansing. They contend further that if there is no estoppel they are entitled to a mitigation of damages because the preference right was not exercised. These contentions are not well founded. We find no authority to support either of them. The covenantor bound himself to warrant and defend the title to the land conveyed by him. No obligation rested on Schneider to buy the title asserted against him. "There is no duty imposed on the vendee to diminish the damages accruing from a breach of a covenant of title by purchasing or extinguishing the outstanding title. The rule that one injured by a breach of contract is bound to lessen the damages as far as practicable by the use of ordinary care and diligence is not applicable to the rights and duties of a warrantee or grantee in a deed containing covenants of warranty, where an adverse outstanding title is asserted against him. In such case he is under no obligation to compromise the claim, and it is no defense to his action for damages, either in bar of the action or in mitigation of the damages, that he might have comprised the action for a less sum than the damages he is seeking to recover." 14 Am. Jur., pp. 591-592, Sec. 166. See also Note 61 A. L. R. pp. 10, 104-105; Tiffany's Real Property (3rd Ed.) Vol. 4, pp. 157-158, Sec. 1013.

The judgment of the district court and the Court of Civil Appeals are reversed and the cause is remanded.

Opinion delivered May 14, 1947.

Rehearing overruled June 25, 1947.

MR. JUSTICE HICKMAN, dissenting.

The majority opinion announces the general rule that constructive eviction which will serve as the basis of a suit for breach of a covenant of general warranty has two elements,

(1) a positive assertion of a paramount title and (2) a yielding to that assertion. That is the generally accepted rule. The problem here is the application of that rule in cases in which the land is public land possessed by the State for the purpose of sale. In support of the general rule announced, the majority cite Rancho Bonito Land, etc., Co. v. North, 92 Texas 72, 45 S. W. 994; Jones' Heirs v. Paul's Heirs, 59 Texas 41; and Clark v. Mumford, 62 Texas 531, and hold that the decision of the Court of Civil Appeals that the facts of the instant case establish the legal equivalent of an eviction, is in conflict with those cases. With that holding I cannot agree.

So far as my investigation extends, in applying that rule to dealings in public lands possessed by the State for sale only, the cases generally are agreed on some such statement as that found in 21 C. J. S. Covenants, Sec. 112, b(4), p. 980, as follows:

"Where the title to land attempted to be conveyed is in the public, there is such a hostile possession as amounts to an eviction the instant the deed is made. * * * An eviction or the equivalent thereof may consist of: The final decision of the land department upon questions of title; a sale of land by the goverenment; the action of the state, through its duly constituted authorities, in forfeiting a survey; * * *"

In effect, that same statement is found in 14 Am. Jur., Covenants, Conditions, and Restrictions, Sec. 74, p. 536, and Thompson on Real Property, Vol. 4, Sec. 3542. It is also announced in these cases, among others, from other jurisdictions: Staub v. Tripp, 248 Mich. 45, 226 N. W. 667, 248 Mich. 45; Crawford County Bank v. Baker, 95 Ark. 438, 130 S. W. 556; Cover. v. McAden, 183 N. C. 641; 112 S. E. 817, West Coast Mfg. Co., West Coast Imp. Co., 25 Wash. 627, 66 Pac. 97, 62 L. R. A. 763; Butler v. Watts, 13 La. Ann. 390; Kansas Pac. R. Co. v. Dunmeyer, 19 Kans. 539; Green v. Irving, 54 Miss. 450, 28 Am. Rep. 360; Elliott v. Thompson, 63 Idaho 395, 120 Pac. (2d) 1014; Beecher v. Tinnin, 26 N. M. 59, 189 Pac. 44; Ernest v. St. Clair 71 Colo. 353, 206 Pac. 799; McGary v. Hastings, 39 Cal. 360, 2 Am. Rep. 456; Baker v. Johnson, 178 App. Div. 230, 165 N. Y. S. 225.

There is also cited in Corpus Juris Secundum, in support of the text, Shannon v. Childers, (El Paso) 202 S. W. 1030, (error refused). That case will be discussed later on in this opinion.

The majority reject all the above cases because, for one reason, they say that some of them are subject to the criticism that they disregard the distinction between the breach of a covenant of seisin and the breach of a covenant of warranty of title. I cannot join in that criticism. To my mind they reflect a keen discernment of the underlying reasons for the general rule announced by the majority and make proper application thereof to situations in which public lands are involved.

In some of the cited cases it was held that an eviction occurred the instant the deed was made. Such holdings resulted from the application of a principle long ago announced by this court and still adhered to without exception. In Jones' Heirs v. Paul's Heirs, supra, one of the principal cases relied upon by the majority, it was held that, "* * * When, at the time of the conveyance, the grantee finds the premises in possession of one claiming under a paramount title, the covenant for quiet enjoyment or of warranty will be held to be broken without any other act on the part of either the grantee or the claimant. * * *" That rule was reaffirmed by the Waco court in Freeman v. Anderson, 119 S. W. (2d) 1081, 1083. The authorities correctly apply that identical principle to cases in which title is in the United States or in a state. When land is shown by field notes on file and maps in the General Land Office, or by some other approved manner, to be vacant public land, offered for sale by the statues, the State is then in possession thereof in legal contemplation and a purchaser could not take possession thereof without becoming a trespasser, could acquire no title thereto by limitation and, therefore, is held to be legally evicted on the very day the deed is made to him without any other act. To my mind the analogy is perfect.

In other cases it is held that some other act is necessary in order to work an eviction. They rest upon the same reasoning as that outlined above. When, in a case like the instant one, the warrantee takes physical possession of public land but which is thought to be privately owned and which is not shown by field notes or maps in the land office to be public land, it would be inequitable to hold that he is evicted on the day the deed is executed to him, because at that time there has been no knowledge on his part and no assertion by the State of its paramount title. But when it has been determined by statutory methods that same is public school land and it is awarded or sold to another, there is then a positive assertion of its paramount title by the State equivalent to an eviction.

The majority say that, even if that be an assertion of the paramount title by the State, no cause of action would arise on the warranty until the warrantee in possession yields thereto. Let us examine that question. Why, in suits for breach of covenant of warranty to private lands, has it been held necessary for the warrantee to show that he has yielded to a superior title? The answer is that his possession may ripen into title by limitation. McGregor v. Tabor, 26 S. W. 443. As long as he clings to that possession he cannot maintain his action, for, if it ripens into limitation title, same will inure to the benefit of the warrantor. In Staub v. Tripp, 248 Mich. 45, 226 N. W. 667, 668, the Supreme Court of Michigan made application of that rule to a case like the instant one in this clear language:

"The defendants further assert that plaintiff had not been evicted before this suit was brought, and therefore he is not entitled to relief. The rule of law that a grantee cannot maintain a suit for breach of title to land prior to his eviction cannot be invoked in this case because the title to the fee is held by the state, and as against the state the plaintiff cannot acquire title by adverse possession." I think that is sound.

To make plain my views respecting this question of eviction, suppose A conveys by warranty deeds one tract to B and another tract to C and it is later determined from surveys that a portion of each tract is public school land, and suppose that B and C each sues A for breach of warranty. B has abandoned his possession and yielded to the paramount title but C has not. In order to recover, each must prove that paramount title rests in the State. Each makes that proof. Would relief be granted B on the ground that he had yielded to that paramount title and denied C because he had not? Surely not. Whether or not C had yielded would be of no importance whatever, since his continued possession could not ripen into title.

I cannot escape the conclusion that the authorities from other jurisdictions give full recognition of the general rule relied on by the majority and make proper application thereof. In my view they are sound and we should not set ourselves apart in opposition to them.

But the majority hold, as I understand their opinion, that the decisions from other jurisdictions do not apply in Texas, because, (1) the laws of this State are peculiar with respect to the sale of public school land; (2) the making of an award by the Commissioner is not a sale; (3) it does not even have the

dignity of an authentic and hostile assertion by the State of its title; (4) the Commissioner is not invested with discretion in making sales of school land; (5) the award is of but little consequence until the lapse of one year; (6) neither the award nor the making of a sale should be given the effect of an ouster, especially of unsurveyed lands; (7) the making of an award by the Commissioner is but "the tentative act of a ministerial officer"; (8) but even if the award were an assertion of title by the State, there was no constructive eviction because Schneider did not yield to it; (9) the institution of suit by the Attorney General constitutes the most authenic assertion of the State's title. I find myself unable to agree with those conclusions. It should be kept in mind that the controlling question is whether or not the State has asserted its title. All other questions are merely argumentative of that one except the question of yielding to paramount title which is discussed above.

As I view the statutes and authorities, the Land Commissioner is clothed with broad discretion in determining whether land is unsurveyed public school and and whether same is within five miles of a producing well. Of course, his act in issuing an award after it has been decided that an applicant is entitled thereto is ministerial, but that is beside the point. It is the award based upon the decision which is the assertion of title and the Commissioner exercises discretion in determining whether or not the award should issue. The principal cases cited by the majority in support of their conclusion that his acts are ministerial are: Short v. W. T. Carter & Bro., 133 Texas 202, 126 S. W. (2d) 953; Camp v. Gulf Pro. Co., 122 Texas 383, 61 S. W. (2d) 773; Caples v. Cole 129 Texas 370, 102 S. W. (2d) 173, 104 S. W. (2d) 3. Without discussion, I quote from those cases. The Short-Carter case quotes with express approval from McKamey v. Aiken, 118 S. W. (2d) 482, the following:

"It is thus seen that upon an application being filed to buy or lease school land the Land Commissioner is given authority to determine whether the land conveyed by the application is vacant and belongs to the State. To control the discretionary action of the Land Commissioner through the processes of the courts in this regard is to control the State itself. This cannot be done absent legislative authority. It is therefore believed that this action is in reality one against the State, since its primary purpose is to preclude the Land Commissioner of the State of Texas, in his official capacity, from performing his discretionary duties enjoined upon him by law; that is, to determine the ownership of the land covered by the application."

From the Caples-Cole case, I quote:

"It is well known that the Land Commissioner is frequently called upon to exercise his judgment and discretion in performing the duties placed upon him by law, and the courts are slow to disturb him or his action in the exercise of his judgment and discretion. DePoyster v. Baker, 89 Texas 156, 34 S. W. 106. If the facts raised a reasonable dispute as to whether the land is 'within five miles of a well producing oil or gas in commercial quantities,' and the issue of fact was presented for determination, the finding by the Land Commissioner upon such issue would be conclusive, unless such finding is clearly illegal, unreasonable, or arbitrary."

The Camp case decides that the Commissioner has discretion in determining whether a vacancy exists, but that he has no discretion in the matter of whether or not he must respect a final, valid judgment of a district court. The holding is reflected by this language:

"That our interpretation of the act is a correct one is apparent when we consider the fact that in the first instance the land commissioner is allowed to exercise his discretion in determining whether a vacancy evists, and it would be unreasonable to hold that it contemplated he should still possess such discretion after a court of competent jurisdiction had adjudged otherwise."

Do the majority now have views different from these?

I cannot subscribe to the theory that an award by the commissioner is a tentative act of but little consequence until the lapse of one year. On the contrary, it is my view that an awardee acquires a title to the land similar in many respects to that acquired by a vendee in a warranty deed with vendor's lien retained. The superior title remains in the State until the awardee discharges his obligations just as it remains in a vendor until the purchase money notes are paid, but the awardee acquires a title upon which an action of trespass to try title may be based and which may be lost by limitation. My understanding of the law is reflected by this language taken from the opinion in Whitaker v. McCarty (Comm. Apps.) 221 S. W. 945, 946:

"It has been definitely established by our Supreme Court that a purchaser from the state, before the issuance of a patent, has title sufficient, through the sale and award, to maintain an

action in trespass to try title, and that his title is subject to divestiture through adverse possession, notwithstanding the state cannot be thus barred. Dutton v. Thompson, 85 Tex. 115, 19 S. W. 1026; Thompson v. Dutton, 96 Tex. 205, 71 S. W. 544; Parker v. Brown, 80 Tex. 557, 16 S. W. 262; Patterson v. Rector, 127 S. W. 561."

This court in Callahan v. Giles, 137 Texas, 571, 155 S. W. (2d) 793, pointed out that, since the amendment of Article 2603 in 1921 the limitation period of one year within which an award may be attacked applies to the State as well as to a private citizen. What the purchaser receives is a written evidence of title with the period of limitation of actions to attack it limited to one year, instead of the usal four years. Pohle v. Robertson, 102 Texas 274, 115 S. W. 1166, from which the majority quote seems to me to emphasize the strength rather than the weakness of an award. The import of that decision to my mind is opposite to that ascribed to it by the majority. In that case the plaintiff legally purchased the land from the State in January, 1900, and later on in the same year the State, through the land commissioner, sold it to the defendant. What was held was that the first sale took the land off the market and the commissioner had no authority to make a second sale. While the first sale remained outstanding, an attempt by the commissioner to make another sale did not convey even a color of title to the purchaser. The language of that opinion quoted by the majority has reference to an attempted second sale and not to an original award.

The same question was presented in State v. Bradford, 121 Texas 515, 50 S. W. (2d) 1065. It was decided in that case that to annul an award requires the exercise of judicial authority, and that the land commissioner cannot permit others to acquire any rights in land covered by an award until same is set aside by a judicial decree. I cannot reconcile the above holdings with the conclusion that the award is of but little consequence until the lapse of one year. The provision for a one-year period of limitation is not a restriction on the title, but a restriction on any, including the State, who would attack it. It shortens the usual period.

The majority say that the award by the commissioner does not even have the dignity of an assertion by the State of its title. That is the vital question. The land commissioner is a constitutional officer clothed with authority to dispose of public lands

in accordance with the statutes. If his acts, within the terms of the statutes, in determining that a tract of land belongs to the public schools and in awarding same to another than the person in possession, after notice and a hearing, and the acceptance by him for the State of cash as a part of the consideration for the sale of the land are not an assertion of title by the State, then it is difficult to imagine what would constitute an assertion. As observed by the Supreme Court of Mississippi in Green v. Irving, 54 Miss. 450, if that is not the only method certainly it is the most natural and approved one by which a State could assert its title. The majority recognize the established rule that an award is prima facie proof of title. To me it is inconsistent to hold that an award proves title, prima facie, but does not assert it.

But the majority say that, since Article 5420 of the Revised Statutes makes it the duty of the attorney general to institute suits for the recovery of public lands claimed adversely to the State, the institution of suit by him is the most authentic and effective assertion of the State's title. If that is correct, then there has been no assertion of the State's title, and therefore no eviction in this case until now, for no suit has yet been filed by the attorney general under that Article. It is the duty of the commissioner and not the attorney general to sell public lands and it is not perceived why his act in doing so is a less authentic assertion of title than the filing of a suit by the attorney general. But the question is not one of degrees of authenticity, it is simply whether or not the commissioner has any authority to assert title and surely, from my viewpoint, he has. I thought this question was finally set at rest in the Short-Carter case, supra, where it was held that that Article had no relation to the commissioner's authority, and that he could sell the land even while a suit brought by the attorney general under that Article was pending.

The pendency of the suit between petitioner and Sansing did not toll the statute as against respondent. City of Beaumont v. Moore, 146 Texas 46, 202 S. W. (2d) 448. In Luling Oil & Gas Co. v. Humble Oil & Refining Co., 143 Texas 54, 191 S. W. (2d) 716, this court held that:

"The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued. Port Arthur Rice Milling Co. v. Beaumont Rice Mills et al, 105 Texas, 514, 143 S. W. 926."

From the date when petitioner had the right to sue respondent limitation was running against him and no act on his part could arrest it.

To hold that limitation began to run against petitioner on his cause of action against respondent for breach of warranty on the day the land was awarded to Sansing would not have the effect of forcing a covenantee who chooses to contest the title of an awardee to run the risk of losing his right to recover from the warrantor in the event he is unsuccessful in his suit, for he may preserve all his rights against the warrantor from the bar of the statutes by impleading him in his suit against the awardee, Norton v. Collins, 1 Texas Civ. App. 272, 20 S. W. 1113; McCleary v. Douglas, 5 Texas Civ. App. 492, 24 S. W. 367; Blount v. Bleker, 13 Texas Civ. App., 227, 35 S. W. 863; Compton v. Rahl, 94 S. W. (2d) 194; Case note 15 Tex. Law Review, pp. 147, 148.

There is yet another all sufficient reason, as I view this case, why the judgments of the lower courts should be affirmed, and that reason is that an application of the rule of stare decisis requires it. As pointed out earlier in this opinion, Corpus Juris Secundum cites in support of the general rule upon which this dissent is based; the case of Shannon v. Childers, 202 S. W. 1030, (error refused). I have inspected the application for writ of error in that case. It discloses that a strong attack was made upon the holding of the Court of Civil Appeals that the action of the commissioner in forfeiting a survey in legal contemplation amounted to an eviction. It was urged that such holding was in direct conflict with Jones' Heirs v. Paul's Heirs, supra; Rancho Bonito Land Co., North, supra; and Clark v. Mumford, supra. Those are the identical cases with which the majority hold the opinion of the Court of Civil Appeals in this case conflicts. The suit in that case, as in this, was upon a covenant of general warranty. The facts of the two cases are not identical, but the principles of decision are identical. I take it that the majority mean to overrule Shannon v. Childers, for their opinion states that that case "* * * contains statements inconsistent with conclusions which we have expressed." There is certainly no dictum in the opinion in the Shannon v. Childers case, and to overrule the statements made therein is to overrule the case itself. In my view, that case should not be overruled, but should be held to govern the instant one on the principle of stare decisis.

To summarize my views on the controlling questions: (1) The decision of the Court of Civil Appeals that the sale of the land to Sansing operated as the legal equivalent of an eviction of petitioner is in harmony with all the cited cases from other jurisdictions; (2) we should not set ourselves apart in opposition to all other courts, and particularly so, since they but apply principles long recognized as sound by this court; (3) Shannon v. Childers is decisive of this case on the principle of stare decisis and should not be overruled; and (4) uniformity of decisions without working injustice to either warrantors or warrantees will result from an affirmance of this case.

I am in agreement with the final holding of the majority, but not with the ground upon which it is based. That holding is that petitioner owed no duty to respondent to take advantage of the preference right given him by Section 6 of the 1931 Sales Act to buy the land which had been awarded to Sansing. But I do not agree with the implied holding that, if he had exercised that right, the respondent would have been entitled on that account to have the damages mitigated. The majority seem to view this question, just as they do the other questions presented, as though the land were privately owned. In my view, that is not the proper approach to the case. It is my understanding of the law that if Schneider had exercised his preference right to purchase the land, he could still have recovered the full consideration paid by him to respondent therefor, had he timely filed his suit. Wheeler v. Styles, 28 Texas 240; Rodgers v. Daily, 46 Texas 578.

Reference is made in the majority opinion to an amendment to the 1931 Sales Act passed in 1939. Vernon's Statutes, Art. 5421c. I do not understand that it is thought that such amendment has any relevancy to the issues of this case. What is written by both the majority and the minority has reference only to the law as it existed prior to that amendment. We are not called upon here to determine what effect, if any, that amendment has on the questions in this case.

I respectfully enter my dissent.

Judge Slatton is concurring therein.

Opinion delivered May 14, 1947.