

# NUMBER 13-18-00156-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**WULCHIN LAND, L.L.C., A TEXAS**
**LIMITED LIABILITY COMPANY,**                                  **Appellant,**

**v.**

**SHARON MARIE SCHULZ ELLIS,**
**INDIVIDUALLY AND AS INDEPENDENT**
**EXECUTRIX AND TESTAMENTARY TRUSTEE**
**OF THE ESTATE OF JOHN T. SCHULZ JR.**
**AND INDEPENDENT EXECUTRIX OF THE**
**ESTATE OF MARY DEANE SCHULZ; JOHN**
**T. SCHULZ III; JEFFREY E. SCHULZ; PAUL J.**
**SCHULZ; THOMAS R. FOREHAND,**
**INDIVIDUALLY AND D/B/A FOREHAND TITLE**
**COMPANY; SCHNEIDER & MCWILLIAMS, P.C.;**
**AND MICHAEL SARTORI,**                                        **Appellees.**

---

On appeal from the 343rd District Court
of Live Oak County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Memorandum Opinion by Justice Perkes**

This case primarily concerns the application of the discovery rule to various claims arising out of two deeds executed in 2001. Appellant Wulchin Land, L.L.C., a Texas Limited Liability Company (Wulchin Land), filed suit in 2014, alleging, among other things, that the sellers misrepresented their mineral rights; i.e., the sellers did not own all of the mineral interests purportedly conveyed by the deeds. The trial court granted summary judgment in favor of appellees Sharon Marie Schulz Ellis, individually and as independent executrix and testamentary trustee of the estate of John T. Schulz Jr. and independent executrix of the estate of Mary Deane Schulz; John T. Schulz III; Jeffrey E. Schulz; Robert P. Schulz; and Paul J. Schulz (collectively, the Schulz children) based on limitations. Without specifying the basis, the trial court also granted summary judgment in favor of appellees Thomas R. Forehand, individually and d/b/a Forehand Title Company (Forehand); Schneider & McWilliams, P.C. (Schneider); and Michael Sartori. Each moved for summary judgment based on limitations, the anti-fracturing rule, and no evidence of damages.

By what we construe as six issues that we have reorganized, Wulchin Land contends on appeal that: (1) the anti-fracturing rule does not apply to its claims against Forehand, Schneider, and Sartori for fraud and breach of fiduciary duty; (2) Wulchin Land is entitled to the benefit of the discovery rule on certain claims; (3) the movants failed to conclusively establish when Wulchin Land's breach of general warranty claim accrued; (4) the trial court abused its discretion by denying Wulchin Land's motions for continuance to respond to Forehand, Schneider, and Sartori's no-evidence motions; (5) the trial court

abused its discretion by denying Wulchin Land leave to add additional parties and continue the trial; and (6) the trial court abused its discretion on various evidentiary rulings. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

In 2001, Benita and Stephen Wulchin, residents of Colorado, contracted for the purchase of contiguous 490-acre tracts of land in Live Oak County, Texas (Tract A and Tract B or collectively, the Ranch). The seller of Tract A was the John T. Schulz, Jr. Family Trusts and the sellers of Tract B were John T. Schulz Jr. and his wife Mary Deane Schulz (collectively, the Sellers).[1] In both purchase contracts and warranty deeds, the Sellers represented that they owned and were conveying the entire surface estate; 50% of the mineral estate, subject to a 25% nonparticipating royalty interest; and 100% of the executive rights in the mineral estate. As Wulchin Land would come to realize more than ten years later, the Sellers only owned 25% of the mineral estate and 50% of the executive rights.

Prior to the conveyances, the Wulchins hired appellee Sartori, a local attorney, to create Wulchin Land as a holding company for the Ranch.[2] Sartori also represented Wulchin Land in the real estate transactions and received separate payments for these services.

The Sellers were represented by Schneider, who prepared the warranty deeds and, according to Wulchin Land, issued an opinion letter confirming that the Sellers

---

[1] The Schulz children were not the Sellers nor in any way parties to any of the agreements.

[2] The purchase contracts were between the Sellers and the Wulchins "and/or assigns," but Wulchin Land was the grantee in each warranty deed.

3

"own[ed]" the respective tracts, but gave "no indication that the mineral interests and executive rights were not owned as represented by [Sellers]."

The purchase contracts provided for Border Title Company to issue the title policies. Wulchin Land alleges in its petition, though, that the title commitments were in fact issued by "Forehand Title Company (Stewart Title)" and these "assur[ed] clear title to Tract A and Tract B, provided the Sellers executed the General Warranty Deeds in favor of [Wulchin Land] in compliance with the terms of the [purchase] [c]ontracts."[3]

In 2009, Pioneer Natural Resources USA, Inc. (Pioneer) approached Wulchin Land about leasing certain mineral interests on the Ranch for oil and gas development. According to its petition, Wulchin Land hired Schneider and Forehand, also an attorney with Schneider,

> to review its title and explain what it owned, what it meant, how it would work, who would be entitled to share in bonus/rents and royalties under the proposed oil and gas lease, and what percentages of the money [Wulchin Land] would receive. Forehand represented to [Wulchin Land] that he conducted an independent examination of title records in the County Clerk's office, as well as reviewing the records of Forehand Title Company, and [Wulchin Land] owned 100% of the Executive Rights in the 980.84 acre tract, and would receive one-half (50%) of any lease bonus and future rents, and one-quarter (25%) of all royalties from any existing of future oil and gas leases, in perpetuity.

Forehand and Schneider also represented Wulchin Land in negotiating and preparing the

---

[3] According to the Texas Department of Insurance,

[t]he title commitment comes before closing; the title policy is issued after closing. The commitment says that a title company is willing to issue title insurance under certain conditions and if the seller fixes certain problems. The policy provides coverage for the property. . . . The title commitment lists any potential issues, exclusions, or exceptions. It alerts the buyer to issues that exist and could cause problems in the future. *It does not guarantee that there are no current issues or that none will arise in the future.*

TEX. DEP'T OF INS., *Title Insurance Frequently Asked Questions*, https://www.tdi.texas.gov/title/titlefaqs.html (last visited Mar. 9, 2020).

4

oil and gas lease with Pioneer, which Wulchin Land executed in July 2009, as if it owned 100% of the executive rights in the mineral estate.

On or about November 5, 2012, Pioneer expressed interest in extending the oil and gas lease but informed Wulchin Land about a "title issue" with the mineral estate. Wulchin Land again engaged Schneider and Forehand to review the lease extension and investigate and resolve the title question. Forehand informed Wulchin Land that the issue was a "missing signature" by one of the Sellers in the original title work and assured it that the problem could be cured. However, before remedying the alleged issue, Schneider and Forehand withdrew from their representation of Wulchin Land, noting that conflicts of interest had arisen because Schneider previously represented the Sellers and Forehand was the title agent.

Wulchin Land then hired its current attorney who, after conducting his own title examination, determined that the Schulz children, through a series of prior conveyances, owned 25% of the mineral estate and 50% of the executive rights. Wulchin Land filed suit on September 3, 2014, less than two years after Pioneer notified it about the "title issues," asserting claims against the Schulz children[4] for declaratory judgment, reformation, slander of title, fraud, negligent misrepresentation, breach of warranty, tortious interference, estoppel by deed, and adverse possession, as well as claims against

---

[4] "A suit seeking to establish the decedent's liability on a claim and subject property of the estate to its payment should ordinarily be instituted against the personal representative or, under appropriate circumstances, against the heirs or beneficiaries." *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975). The Shulz children did not argue in their summary judgment motions that Wulchin Land's claims fail as to some of them because they are not properly representative of their parents' estates. Therefore, we offer no opinion on whether the various claims alleged by Wulchin Land can be maintained against all of the Schulz children. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) ("Because the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious.").

Sartori, Forehand, and Schneider for fraud and breach of fiduciary duty.

The Schulz children moved for summary judgment based on limitations. Sartori, Forehand, and Schneider moved for summary judgment based on the anti-fracturing rule, limitations, and no evidence of damages. The trial court granted appellees' motions without specifying the basis for its ruling, and this appeal ensued.

## II. STANDARD OF REVIEW

A party moving for traditional summary judgment must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The defendant has the burden to establish its affirmative defense of limitations. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) (citing *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997)). A defendant moving for summary judgment on a limitations defense must: (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *Id.* (citing *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990)).

A motion for no-evidence summary judgment requires the non-movant to present more than a scintilla of probative evidence raising a genuine issue of material fact supporting each element contested in the motion. TEX. R. CIV. P. 166a(i); *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

6

"When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)). We review summary judgments de novo. *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 425 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)). We take as true all evidence favorable to the non-movant, indulge every reasonable inference, and resolve any doubts in the non-movant's favor. *Id.* at 426 (citing *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)).

### III. ANTI-FRACTURING RULE

Before turning to the discovery rule's application, we must first determine which claims were properly before the trial court in the first instance. In addition to moving for summary judgment on limitations grounds, Sartori, Schneider, and Forehand also argued that Wulchin Land violated the anti-fracturing rule by miscasting its malpractice claims as claims for fraud and breach of fiduciary duty. By its first issue, Wulchin Land contends that its intentional tort claims were not precluded by the anti-fracturing rule.

### A. Applicable Law & Standard of Review

"The anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty, or violations of the DTPA." *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied) (citing *Beck v. Law Offices of Edwin J. (Ted) Terry Jr., P.C.*, 284 S.W.3d 416, 426–27 (Tex. App.—Austin 2009, no

7

pet.)); *see also Harris & Greenwell, LLP v. Hilliard*, No. 13-12-00089-CV, 2013 WL 7707847, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2013, pet. granted, judgm't vacated w.r.m.) (mem. op.). If the gravamen of the plaintiff's complaint is that the attorney failed to exercise the normal degree of care, skill, or diligence in representing the plaintiff, then the claim sounds in negligence and the anti-fracturing rule applies. *Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.) (citing *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.—San Antonio 2003, pet. denied)); *see also Hilliard*, 2013 WL 7707847, at *2. On the other hand, if, for example, the claim focuses on an attorney obtaining an improper benefit, then the claim may appropriately be classified as a breach of fiduciary duty claim. *Riverwalk CY Hotel Partners*, 391 S.W.3d 229 at 236 (citing *Murphy v. Gruber*, 241 S.W.3d 689, 93 (Tex. App.—Dallas 2007, pet. denied)); *see also Hilliard*, 2013 WL 7707847, at *3.

Whether a plaintiff has accurately labeled their claims against an attorney is a question of law. *Riverwalk CY Hotel Partners,* 391 S.W.3d at 236; *see also Hilliard*, 2013 WL 7707847, at *3. We review questions of law de novo. *Riverwalk CY Hotel Partners,* 391 S.W.3d at 236 (citing *Gruber*, 241 S.W.3d at 692–93).

**B.    Analysis**

After reviewing the record, we conclude that Wulchin Land's claims against its attorneys are properly characterized as malpractice claims. Despite the labels Wulchin Land placed on them, the company's primary complaints are that the attorneys provided bad legal advice and failed to disclose conflicts of interest. More specifically, Wulchin Land complains that it engaged these attorneys to represent it in the real estate

transactions involving the conveyance of mineral interests, but that none of them advised Wulchin Land of the title defect in the mineral estate; i.e., Sartori failed to discover the title defect before the Ranch was purchased in 2001, and Schneider and Forehand failed in the same regard before Wulchin Land executed the oil and gas lease with Pioneer in 2009. In other words, the attorneys allegedly "failed to exercise the degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly possess." *See Riverwalk CY Hotel Partners*, 391 S.W.3d 229 at 236. As such, these allegations are properly characterized as malpractice claims, and not as breach of fiduciary duty or fraud claims.

Wulchin Land also complains that: Sartori failed to disclose he previously performed work for Forehand Title Company; that Schneider failed to disclose it represented the Sellers prior to and during the 2001 transaction; and Forehand failed to disclose his role as the title agent.[5] However, representing different clients with adverse interests is not the type of conflict of interest that would give rise to a breach of fiduciary duty claim; instead, such a claim arises when a lawyer has a direct pecuniary interest in the transaction or litigation that is adverse to the client, and the attorney pursues his own interest to the client's detriment. *Id.* (citing *Beck*, 284 S.W.3d at 436).

---

[5] Title insurance companies and title insurance agents play different roles in real estate transactions.

> The title insurance company insures real property titles. The title insurance agent sells title insurance, collects the premiums, and issues or countersigns policies for the insurance company. This agent is usually a title and abstract company which provides assorted services to its clients, such as selling title insurance, researching the title for that insurance, surveying the realty, and "closing" through escrow agents.

*Cameron Cty. Sav. Ass'n v. Stewart Title Guar. Co.*, 819 S.W.2d 600, 602 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied) (internal citations omitted). Additionally, title examinations are done for the benefit of the title company issuing the policy, not the insured. *IQ Holdings, Inc. Stewart Title Guar. Co.*, 451 S.W.3d 861, 871 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

It is not clear from Wulchin Land's petition how the attorneys allegedly pursued their own interests to the detriment of Wulchin Land. Nevertheless, to the extent Wulchin Land argues the attorneys favored their own pecuniary interests by obtaining legal fees from Wulchin Land instead of disclosing these potentially disqualifying conflicts, "that interest, without more, is insufficient to allege the type of dishonesty or intentional deception necessary to convert a negligence claim into one for breach of a fiduciary duty." *See Pak*, 313 S.W.3d at 458; *see also Hilliard*, 2013 WL 7707847, at *5. Thus, under the facts alleged in this case, the failure to disclose these conflicts of interest does not constitute a claim for breach of fiduciary duty. *See Pak*, 313 S.W.3d at 458; *see also Hilliard*, 2013 WL 7707847, at *5.

The trial court did not err in granting summary judgment dismissing Wulchin Land's intentional tort claims against Sartori, Schneider, and Forehand. We overrule Wulchin Land's first issue.

## IV. LIMITATIONS

Other than its breach of warranty claim, which we address below, Wulchin Land acknowledges that the statute of limitations has run on all of its claims. By its second issue, Wulchin Land contends that it was entitled to the benefit of the discovery rule on its claims for negligent misrepresentation and fraud concerning the 2001 transactions and its legal malpractice claims against Sartori, Schneider, and Forehand.[6]

---

[6] Wulchin Land did not brief the application of the discovery rule to its claims for declaratory judgment, reformation, slander of title, tortious interference, estoppel by deed, or adverse possession. Accordingly, these issues were not preserved for our review. *See* TEX. R. APP. P. 38.1(i).

## A.     Applicable Law

A statute of limitations establishes a time limit for a plaintiff to file a lawsuit.[7] *See Crocket Cty. v. Klassen Energy, Inc.*, 463 S.W.3d 908, 912 (Tex. App.—El Paso 2015, no pet.); *De Leon Torres v. Johns*, 706 S.W.2d 693, 695 (Tex. App.—Corpus Christi–Edinburg 1986, no writ). Determining when a cause of action accrued, the date on which the action's limitations period began to run, is generally a question of law. *Hooks v. Samson Lone Star, L.P.*, 457 S.W.3d 52, 57–58 (Tex. 2015). If a cause of action's accrual date is not defined by statute, it is determined under the common law. *KPMG Peat Marwick*, 988 S.W.2d at 749. Under the legal-injury rule, "a cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages had not yet occurred." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994)).

Under the discovery rule, however, the accrual date is deferred until the plaintiff knows, or by exercising reasonable diligence should know, that it has suffered an injury that was likely caused by the wrongful acts of another. *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998). The discovery rule applies when a plaintiff pleads and proves that its injury was inherently undiscoverable at the time it occurred but can be objectively verified. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1997). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). "This

---

[7] Wulchin Land's claims for negligent misrepresentation and legal malpractice are subject to a two-year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a), and its claims for fraud and breach of general warranty are subject to a four-year statute of limitations. *See id.* §§ 16.004(a)(4), 16.051.

legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam) (citing *Horwood*, 58 S.W.3d at 736).

## B.    Misrepresentation Claims

As a matter of law, the injuries upon which Wulchin Land's claims for negligent misrepresentation and fraud are based were not inherently undiscoverable. At the time of the conveyances, Wulchin Land was charged with constructive notice of the chains of title for Tract A and Tract B in the public records. *See Hooks*, 457 S.W.3d at 59 ("Land title records and probate proceedings create constructive notice, 'an irrebuttable presumption of actual notice,' which prevents limitations from being delayed." (quoting *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981))).

As a matter of law, the accrual of a fraud claim based on a title defect is not delayed when a plaintiff has actual or constructive notice of the defect. *Id.*; *see, e.g.*, *Sherman v. Sipper*, 152 S.W.2d 319, 321 (Tex. 1941) (holding claim against sellers who fraudulently misrepresented their title in mineral estate was barred by limitations because buyers were charged with constructive notice of the chain of title in the public record). A plaintiff may be estopped from invoking limitations when the fraud extends to the public record but there is no allegation that the public record in this case was tainted by fraud. *See Hooks*, 457 S.W.3d at 59.

Pioneer discovered the title defect in 2012 and made inquiry. Wulchin Land's current attorney later confirmed this defect after conducting his own title examination of the public record. Therefore, even if misrepresentations were made, Wulchin Land was charged with "an irrebuttable presumption of actual notice" that these representations

12

were false at the time the contracts and deeds were executed. *See Mooney*, 622 S.W.3d at 85. Thus, Wulchin Land's claims for negligent misrepresentation and fraud accrued in 2001 and are barred by limitations. This sub-issue is overruled.

## C.     Malpractice Claims

### 1.      Failure to Disclose Conflicts of Interest

In general, "the discovery rule applies to legal-malpractice cases, so that in such cases, limitations does not begin to run until the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120–21 (Tex. 2001) (citing *Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988)). Wulchin Land's malpractice claims based on a failure to disclose a conflict of interest do not implicate Wulchin Land's constructive notice of the public record. Accordingly, we conclude the discovery rule applies. *See id.*

As such, it was Sartori, Schneider, and Forehand's burden to establish "as a matter of law that there [wa]s no genuine issue of material fact about when [Wulchin Land] discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *See KPMG Peat Marwick*, 988 S.W.2d at 748 (citing *Burns*, 786 S.W.2d at 267). None of these appellees established the accrual date for these malpractice claims as a matter of law; therefore, summary judgment based on limitations was improper. *See id.*

### 2.      Bad Legal Advice

We must first determine whether the discovery rule applies to legal malpractice claims arising out of an attorney's negligent title review. Stated differently, should a client

13

be charged with constructive notice that their attorney's title advice is contrary to the chain of title in the public record, thus triggering limitations to run on their legal malpractice claim? Due to the fiduciary relationship that exists between an attorney and client, we conclude that the answer is no—instead, the discovery rule applies.[8]

The fiduciary relationship that exists between an attorney and client is the primary reason for applying the discovery rule to legal malpractice claims: "As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation. The client must feel free to rely on his attorney's advice. Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved." *Maverick*, 760 S.W.2d at 645 (citations omitted).

In the same vein, a fiduciary relationship can except a plaintiff from constructive notice of public records. *Andretta v. West*, 415 S.W.2d 638, 641–42 (Tex. 1967) (concluding plaintiff was excepted from constructive notice of public records due to fiduciary relationship between the parties, and therefore plaintiff's claim was not barred by limitations); *see Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (per curiam) (recognizing the fiduciary-relationship exception to constructive notice of public records but rejecting its application to the case because the plaintiff failed to plead or prove the existence of a fiduciary relationship) (citing *Via Net*, 211 S.W.3d at 313); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998) (same).

Thus, we find no principled reason to create an exception to the general rule that legal malpractice claims are subject to the discovery rule. *See Apex Towing*, 41 S.W.3d

---

[8] We presume for purposes of this discussion that conducting a title review was within the scope of representation, a material fact disputed by Sartori, but not Forehand or Schneider.

14

at 120–21 (citing *Maverick*, 760 S.W.2d at 646). Wulchin Land exercised due diligence by hiring attorneys to represent it in these transactions. Like any client, Wulchin Land must feel free to rely on its attorneys' advice, and therefore the company had no occasion to search the public record. *See Maverick*, 760 S.W.2d at 645; *Andretta*, 415 S.W.2d at 642. This combination of factors rendered Wulchin Land's injuries from these legal malpractice claims inherently undiscoverable. *See Horwood*, 58 S.W.3d at 734–35. We also note that our holding will not disturb the stability and reliability of titles, the basis for charging grantees with constructive notice of public records. *See Neel*, 982 S.W.2d at 887.

We conclude the discovery rule applies to Wulchin Land's malpractice claims against Sartori, Schneider, and Forehand based on their failure to advise Wulchin Land of the title defect. Because the appellees did not establish the accrual date of these claims as a matter of law, it was improper for the trial court to grant summary judgment based on limitations. *See KPMG Peat Marwick*, 988 S.W.2d at 748. This malpractice sub-issue is sustained.

## D.    Breach of Warranty of Title

By its third issue, Wulchin Land contends that its breach of general warranty claim against the Schulz children is not barred by limitations because (1) such a claim does not accrue until an actual or constructive eviction occurs, and (2) the Schulz children failed to conclusively establish this fact. We agree.

"The rule is well established that a cause of action for breach of a covenant of general warranty does not arise until there has been an [actual or constructive] eviction." *Schneider v. Lipscomb Cty. Nat'l Farm Loan Ass'n*, 202 S.W.2d 832, 834 (Tex. 1947);

15

*Stumhoffer v. Perales*, 459 S.W.3d 158, 165 (Tex. App.—Houston 2015, pet. denied); *Solares v. Solares*, 232 S.W.3d 873, 879 (Tex. App.—Dallas 2007, no pet.); *see Gibson v. Turner*, 294 S.W.3d 781, 787 (Tex. 1956) ("[T]here can be no breach of warranty and no recovery of damages for breach of warranty unless and until there has been an actual or constructive eviction of the lessee.").

A constructive eviction occurs when paramount title has been positively asserted against the grantee and the grantee has yielded to that assertion. *Schneider*, 202 S.W.2d at 835; *Perales*, 459 S.W.3d at 165; *Solares*, 232 S.W.3d at 879. The grantee can yield by surrendering possession to the superior titleholder or by purchasing the title, and then resort to recovering on the warranty. *Schneider*, 202 S.W.2d at 835; *Solares*, 232 S.W.3d at 879. Additionally,

> when the true owner is in possession at the time of the conveyance and the grantee is not, and at that time the grantee "finds the premises already in the possession of one claiming under a paramount title, the covenant of warranty is breached, and the [grantee] may maintain an action . . . ."

*Solares*, 232 S.W.3d at 879 (quoting *Morrison v. Howard*, 261 S.W.2d 910, 912–13 (Tex. App.—Austin 1965, writ ref'd n.r.e.) (on reh'g per curiam)).

The Schulz children contend that the Sellers breached the general warranties immediately upon execution of the deeds, equating those breaches to constructive evictions. We agree that the Sellers breached the warranties at the time the deeds were executed in 2001. *See Trial v. Dragon*, No. 18-0203, 2019 WL 2554130, at *7 (Tex. June 21, 2019) (concluding under similar facts that "[t]here is no question that [the grantor] breached the general warranty at the time of execution"). We disagree, however, that a seller's breach is tantamount to a buyer's constructive eviction.

Even if we assume that the Schulz children's previously recorded title constituted

16

a positive assertion of paramount title against Wulchin Land, there is no evidence in the record that Wulchin Land yielded to that assertion. To the contrary, it is undisputed that Wulchin Land took possession of the Ranch in 2001 and independently executed an oil and gas lease for the premises in 2009, accepting the entire bonus payment as the purported owner of 100% of the executive rights. Both of these actions—executing the lease without the Schulz children's approval and accepting 100% of the bonus payment— were done in contravention of the Schulz children's 50% interest in the executive rights. Simply put, there is no evidence in the summary judgment record that Wulchin Land has ever yielded to an assertion of paramount title by the Schulz children.

We also note that, although the *Dragon* Court concluded that the grantor "breached the general warranty at the time of execution," the deed at issue was executed in 1992, yet the grantees filed suit for breach of warranty against the grantor's heirs in 2014 and there is no discussion in the opinion about when the claim accrued or whether it was barred by limitations. *See Dragon*, 2019 WL 2554130, at *1–2, 7–8. Thus, the supreme court has expressed no clear intent to overrule *Schneider*, an opinion which, unlike *Dragon*, specifically addressed the accrual date of a breach of general warranty claim. *Compare Schneider*, 202 S.W.2d at 833 *with Dragon*, 2019 WL 2554130, at *7–8.

Accordingly, the Schulz children were not entitled to summary judgment on their limitations defense because they failed to conclusively establish the accrual date of Wulchin Land's breach of warranty claim. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *Schneider*, 202 S.W.2d at 835. We sustain Wulchin Land's third issue.[9]

---

[9] We note that the proper measure of damages for a breach of general warranty claim is the consideration paid for the conveyance or for whatever portion of the conveyance that was subject to a failure of title. *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).

17

## V. OTHER SUMMARY JUDGMENT GROUNDS

Sartori, Schneider, and Forehand also filed no evidence motions for summary judgment on the element of damages. Sartori limited his no evidence motion to the malpractice claim alleging that he failed to disclose a conflict of interest, while Schneider and Forehand contended more broadly that Wulchin Land did not suffer "any damages due to [their] alleged malpractice." The trial court granted all motions for summary judgment without comment. Wulchin Land does not contend on appeal that it produced evidence of damages on any of these claims; instead, by its fourth issue, Wulchin Land argues that the trial court abused its discretion when it denied Wulchin Land's motion for a continuance to develop the record on damages.

### A. Applicable Law & Standard of Review

No-evidence summary judgment may be granted only "[a]fter adequate time for discovery." TEX. R. CIV. P. 166a(i). "The trial court may order a continuance of a summary judgment hearing if it appears 'from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition.'" *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (quoting TEX. R. CIV. P. 166a(g)). A trial court's order denying a motion for continuance is reviewed for a clear abuse of discretion on a case-by-case basis. *Id.* (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2000). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *In re National Lloyds Ins.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)). Courts consider the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for

18

continuance seeking additional time to conduct discovery: the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance exercised due diligence to obtain the discovery sought. *Joe*, 145 S.W.3d at 161.

**B.      Analysis**

On June 6, 2017, Wulchin Land filed a "Motion for Continuance of Section IV.D of Michael Sartori's First Amended Traditional and No-Evidence Motion for Summary Judgment," asking for additional time to develop the record on damages based on "the benefit of the bargain" it would have received if the Sellers had owned all of the mineral interests purportedly conveyed in the deeds.

On August 10, 2017, the trial court conducted a pretrial hearing. At that time, there were a number of motions and other filings pending, including Wulchin Land's motion to continue Sartori's no-evidence motion on damages. During announcements, Wulchin Land's counsel identified for the trial court's consideration two other motions Wulchin Land had filed: "I have a motion for leave to file an amended petition, along with that a motion for continuance for the trial setting currently in September . . . ."

Before proceeding with the various hearings, the trial court announced that it had granted the Schulz children's motion for summary judgment based on limitations. The following exchange then ensued between Wulchin Land's counsel and the court:

[COUNSEL]:      Your Honor—

THE COURT:      Yes, sir.

[COUNSEL]:      — if I might, if the Court granted the summary judgment of the [Schulz] defendants, then I'm supposing that it has accepted the argument that case of *Cosgrove v. Cade* controls, which would mean that my Plaintiff

> Wulchin Land Company would have had constructive notice of the state of title back in 2001. If that's the Court's opinion, then essentially that would be the same argument that all the other defendants are making, and it seems to me that rather than doing anything else in this case, the summary judgments ought to be granted as to all the defendants so that we can have a final judgment for the purposes of appealing that particular ruling.

THE COURT:   I can't disagree, so. . .

. . . .

THE COURT:   Will that get us to where we need to be?

[COUNSEL]:   Obviously I'm not waiving my argument.

THE COURT:   On, no, no. I know that.

[COUNSEL]:   But in terms of disposition of the case it would make sense to me to go ahead if that's the Court's thinking to grant it as to all defendants and let's go up on appeal and see if the Court is right as to all—

THE COURT:   Is everybody comfortable with what their summary judgment proof looks like on all their motions?

. . . .

[COUNSEL]:   The only thing I would like to do is supplement in response to their motion some discovery that we took. We took Mr. Schneider's deposition, we didn't quite finish it, and I would like to be able to respond to that just for purposes of the appellate record.

THE COURT:   Get it all responded to.

After counsel for the Schulz children raised a concern about supplementing the record after the trial court had already granted summary judgment for his clients, Wulchin Land's counsel clarified that he would only be supplementing the record "to respond to [Schneider's] motion [for summary judgment]." The trial court agreed, and instructed Schneider's counsel not to file a proposed order until Wulchin Land had filed its

20

supplemental response. However, the hearing concluded without any discussion of Wulchin Land's motion to continue Sartori's no-evidence motion for summary judgment and the trial court granted Sartori's motion thirteen days later by submission.

Approximately a month after the hearing, on September 18, 2017, Wulchin Land filed a joint response to Forehand and Schneider's motions for summary judgment, attaching 521 pages of evidence. Later that same day, Wulchin Land filed a verified "Motion for Continuance on No-Evidence Motion for Summary Judgment of Schneider & McWilliams and Thomas Forehand as to Damages," mirroring the arguments raised in its prior motion to continue Sartori's no-evidence motion. There is no indication in the record that this motion was set for a hearing. Twenty-four days later, on October 12, 2017, the trial court granted Forehand and Schneider's summary judgment motions by submission.

In order to preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely motion with sufficient specificity and the trial court expressly or implicitly ruled on the motion or refused to rule on the motion, and the complaining party objected to the refusal. TEX. R. APP. P. 33.1(a). Wulchin Land argues that both motions were implicitly overruled when the trial court granted Sartori, Schneider, and Forehand's motions for summary judgment. *See Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 114–15 (Tex. App.—Waco 1999, no pet.) (holding that trial court implicitly overruled motion for continuance filed two days before summary judgment hearing by granting summary judgment); *but see Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 224–25 (Tex. App.—Dallas 2008, pet. struck) (holding that appellant did not preserve error because he failed to obtain an explicit ruling on motion for continuance); *Dart v. Balaam*, 953 S.W.2d 478, 483 (Tex. App.—Fort Worth 1997, no pet.) (same).

21

Merely filing a motion is not sufficient to preserve an error; the movant must bring the motion to the trial court's attention, thereby giving the court an opportunity to rule on the motion. *In re Purported Lien or Claim Against Collin Cty. Clerk Taylor*, 219 S.W.3d 620, 623 (Tex. App.—Dallas 2007, pet. denied); *In re Davidson*, 153 S.W.3d 490, 491 (Tex. App.—Amarillo 2004, orig. proceeding); *Metzger v. Sebeck*, 892 S.W.2d 20, 49 (Tex. App.—Houston [1st Dist.] 1994, writ denied). It is self-evident that a trial court cannot abuse its discretion if it was not called upon to exercise its discretion in the first instance.

We disagree that Wulchin Land's motions to continue were implicitly overruled in this case because there is no indication from the record that the trial court was aware of their existence. *See In re Purported Lien*, 219 S.W.3d at 623; *In re Davidson*, 153 S.W.3d at 491; *Sebeck*, 892 S.W.2d at 49. It is always incumbent upon a movant to bring its motions to the trial court's attention or risk waiving error, but that is especially true in a case like this with numerous parties and filings. Having failed to do so, Wulchin Land's fourth issue was not preserved for our review.

Accordingly, Wulchin Land's fourth issue is overruled. Considering Wulchin Land's failure to produce any evidence of damages, we affirm the no-evidence summary judgments rendered on three out of four of its legal malpractice claims. *See* TEX. R. CIV. P. 166a(i).

## VI. ADDITIONAL PARTIES

By its fifth issue, Wulchin Land complains that the trial court abused its discretion when it denied Wulchin Land's motion for leave to add additional parties and to continue the trial.

22

## A.    Applicable Law & Standard of Review

When a party seeks to amend its pleading after the date established by a scheduling order, the movant must seek leave from the court. TEX. R. CIV. P. 63. Under Rule 63, "a trial court has no discretion to refuse an amendment unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *Grennhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990) (citations omitted).

An amendment that is prejudicial on its face has three defining characteristics: (1) it asserts a new substantive matter that reshapes the nature of trial itself; (2) the opposing party could not have anticipated the new matter in light of the development of the case up to the time the amendment was requested; and (3) the amendment would detrimentally affect the opposing party's presentation of its case. *Halmos v. Bombardier Aerospace Corp.* 314 S.W.3d 606, 623 (Tex. App.—Dallas 2010, no pet.) (citing *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex. App.—Dallas 1996, writ denied)).

A trial continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. The grant or denial of a motion for continuance is within the sound discretion of the trial court. *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). The trial court's ruling will not be disturbed unless the record shows a clear abuse of discretion. *Villegas*, 711 S.W.2d at 626. A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *In re Nat'l*

23

*Lloyds Ins.*, 507 S.W.3d at 226 (citing *Cire*, 134 S.W.3d at 838).

## B.      Analysis

On September 3, 2014, Wulchin Land filed its original petition. On February 6, 2017, the trial court entered an agreed scheduling order establishing: a March 1, 2017 deadline to join parties; an April 19, 2017 deadline for Wulchin Land to amend and supplement its petition; a May 12, 2017 deadline for appellees to amend and supplement their answers; and a September 25, 2017 trial setting. On May 12, 2017, Schneider and Forehand both filed amended answers that contained pleas in abatement, identifying the following as necessary parties: Border Title Group as the designated title company in the earnest money contracts; Stewart Title Guaranty Company as the underwriter; and HMW Title Research d/b/a/ Forehand Title Company as the owner of the title plant and title insurance agent. The pleas requested "that this case be abated pending [their] joinder." There is no indication in the record that these pleas were set for hearing or granted by the trial court.

On July 13, 2017, Wulchin Land filed a "Motion for Leave to File Third Amended Petition and for Continuance," citing the pleas as the basis to join the additional parties, to continue the trial setting, and to enter a new scheduling order that allowed Wulchin Land to obtain discovery from these new parties. Six days later, without leave from the trial court, Wulchin Land filed its "Third Amended Original Petition," adding the three additional parties and bringing claims against them for fraud and negligent misrepresentation, both allegedly arising out of the 2001 transactions, and for breaching the terms of the title policy.

The Schulz children and Sartori objected to Wulchin Land's motion and late-filed

24

petition, arguing the late addition of these parties was a dilatory tactic because Wulchin Land had been aware of these parties and their potential liability since filing suit. For example, they pointed out that Wulchin Land identified Stewart Title Guarantee Company as a potential party in its original petition as follows:

> In the event Stewart Title Company does not elect to defend [Wulchin Land] against the cloud placed on its' [sic] title to the property, [Wulchin Land] intends to join the insurer as an additional party defendant in the action and seek a declaratory judgment to establish the insurer's obligation to litigate that action and/or indemnify the insured for any losses sustained.

Likewise, Border Title Group was identified as the title company issuing the title policy in the earnest money contracts attached to Wulchin Land's original petition. Thus, the Schulz children and Sartori argued that Schneider and Forehand's pleas could not constitute "notice" to Wulchin Land that these parties were necessary to the suit. They also submitted that continuing the trial would prejudice them by causing unnecessary delay and expense that were attributable solely to Wulchin Land's failure to exercise due diligence in prosecuting its claims.

The trial court struck Wulchin Land's amended petition during the August 10, 2017 hearing. Nevertheless, on November 13, 2017, after the trial court had granted all of the appellees' motions for summary judgment and without requesting leave, Wulchin Land filed its "First Supplemental Petition," identifying the same three additional parties, as well as Stewart Information Services Corporation, but only alleging claims for fraud and breach of the title policy. At a subsequent hearing, the trial court also struck this petition, deeming it a "nullity."

We conclude the trial court did not abuse its discretion when it denied Wulchin Land's motion for leave because allowing the amendments—particularly, the claims

25

under the title policies—would have reshaped the cause of action, prejudicing appellees by unnecessarily delaying the trial. *See Grennhalgh*, 787 S.W.2d at 940. And as we discussed above, Wulchin Land's claims for fraud and negligent misrepresentation arising out of the 2001 transactions are barred by limitations; therefore, allowing Wulchin Land to bring these time-barred claims against additional parties would have been pointless. Moreover, as the Schulz children and Sartori demonstrated in their objections, Wulchin Land had actual notice of its potential claims under the title policies from the inception of the suit. It would have been reasonable for the trial court to conclude that Wulchin Land's late filing was the result of Wulchin Land's failure to exercise due diligence in the prosecution of its claims, and therefore sufficient cause did not exist to continue the trial. *See* TEX. R. CIV. P. 251. We overrule Wulchin Land's fifth issue.[10]

## VII. CONCLUSION

The appellees were entitled to summary judgment on all of Wulchin Land's claims other than (1) its legal malpractice claim against Sartori based on his alleged failure to advise Wulchin Land about the title defect, and (2) its breach of general warranty claim against the Schulz children. We reverse the summary judgment as to those claims and remand for further proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.

GREGORY T. PERKES
Justice

Delivered and filed the
19th day of March, 2020.

---

[10] Because these first five issues are dispositive, we do not reach Wulchin Land's sixth issue concerning evidentiary rulings. *See* TEX. R. APP. P. 47.1.

26